FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
ALEXANDER B. GURA (SBN 305096)
gura@novianlaw.com
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, California 90067
Telephone: (310) 553-1222
Facsimile: (310) 553-0222
Attorneys for Plaintiff GUILBERT TEX, INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILBERT TEX, INC. a California Corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>CITIBANK, N.A., and DOES 1 through 10, inclusive,<br><br>          Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>    **1. Negligence; and**<br>    **2. Declaratory Relief**<br><br>**AND DEMAND FOR JURY TRIAL** |

1
COMPLAINT

4814-2768-3555, v. 1

1   Plaintiff GUILBERT TEX, INC., a California Corporation ("Plaintiff") hereby

2   complains against Defendant CITIBANK, N.A., ("Citibank"), and DOES 1 through

3   10, inclusive (the "Defendants"), and alleges as follows:

4   **<u>NATURE OF THIS ACTION</u>**

5   1.   By way of this action, Plaintiff seeks a judicial declaration from this Court

6   seeking a determination that: (i) the such funds held by Defendants are the lawful and

7   sole property of Plaintiff and should be turned over to Plaintiff; (ii) Defendants' failure

8   to place a hold on such funds constitutes a violation of District of Columbia Code

9   section 26-803; and (iii) Defendants' failure to place a hold such funds constitutes a

10   violation of California Financial Code section 1450, subdivision (a). Plaintiff also

11   seeks damages arising from Defendants' negligence in refusing to withhold such funds

12   from parties who, upon information and belief, intend to misappropriate them.

13   As further background of the genesis of the funds in dispute, in or about August

14   2020, Plaintiff, in good faith, entered into a written agreement with various parties to

15   purchase 125,000 face masks.  Plaintiff was told by one of such parties, United States

16   Fed Group Consortium Syndicate ("US FED Group"), to place its order through an

17   entity named Datta Holdings, LLC ("Datta Holdings").

18   As directed by US Fed Group, Plaintiff executed a purchase agreement with

19   Datta Holdings and remitted payment to US Fed Group by wiring $258,750.00 to a

20   bank account, Citibank Bank Account No. 15556727, purportedly owned by and

21   controlled by an entity named United States Fed Group, LLC Treasury Department,

22   but in actuality owned and controlled by US FED Group.

23   Pursuant to the agreement, Plaintiff was entitled to a full and complete refund

24   in the event that the masks were not delivered within 30 days.  Though neither US

25   FED Group nor Datta Holdings delivered any masks to Plaintiff within 30 days and

26   still, at the time of the filing of this complaint, have not delivered any masks to

27   Plaintiff.  Yet, rather than fulfill their contractual obligation to provide Plaintiff with

28   a refund, US FED Group and Datta Holdings remain in wrongful possession of

2

COMPLAINT

1   Plaintiff's money, an amount in no less than $258,750.00 (the "Disputed Funds").

2       Upon information and belief, the Disputed Funds are currently unlawfully being

3   held with Defendants in the Citibank Bank Account No. 15556727 (the "Account"),

4   located in the District of Columba.

5       Upon information and belief, US FED Group recently attempted to withdraw

6   the Disputed Funds in an attempt to permanently misappropriate the funds and defraud

7   Plaintiffs. Upon discovering this information, Plaintiff immediately notified

8   Defendants that the Disputed Funds were the sole property of Plaintiff.

9       Plaintiff additionally provided Defendants with an affidavit from its chief

10  executive officer, Mr. Siamak Okhovat, attesting to the unlawful acts of US FED

11  Group and Datta Holdings, and requested that Defendants refuse to deliver payment

12  of the Disputed Funds to US Fed Group, or any other individual other than Plaintiff,

13  pursuant to District of Columbia Code section 26-803 and California Financial Code

14  section 1450, subdivision (a). Defendants refused to do so and continue to refuse to

15  ensure that the Disputed Funds remain frozen in place or rightfully returned to

16  Plaintiff.

17                              **PARTIES**

18      2.      Plaintiff is a corporation incorporated under the laws of California and

19  having its principal place of business in the State of California.

20      3.      Defendant Citibank, N.A. is a federal savings bank with its headquarters

21  and main office in Sioux Falls, South Dakota. Citibank is duly licensed and authorized

22  to do business and California. Upon information and belief, Citibank owns and

23  operates a bank branch located in Washington, D.C., which maintains the Citibank

24  Bank Account No. 15556727.

25      4.      Plaintiff is informed and believes, and thereon alleges, that the actions

26  and omissions that serve as the basis for this complaint were undertaken jointly and

27  with the consent, conspiracy, cooperation, and joint participation of all defendants.

28      5.      Plaintiff is informed and believes, and thereon alleges, that at all times

3
COMPLAINT

1    mentioned herein, each defendant was the agent, joint venture, and/or employee of

2    each and every other defendant, and in doing the things alleged in this complaint, each

3    defendant was acting within the course and scope of such agency, joint venture, and/or

4    employment and with the permission and consent of each of the other defendants.

5        6.    The true names and capacities, whether individual, corporate, associate,

6    or otherwise, of Defendants named herein as DOES 1 through 10, inclusive, and each

7    of them, are unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants,

8    and each of them, by such fictitious names.  Plaintiff will advise the Court and seek

9    leave to amend this Complaint when the true names and capacities of each such

10   Defendant has been ascertained.  Plaintiff is informed and believes, and based thereon

11   alleges, that each such Defendant designated as a DOE is responsible in some manner

12   for the events and happenings referred to herein or as hereinafter specifically alleged.

13                      **JURISDICTION AND VENUE**

14       7.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332,

15   as there is diversity of citizenship between the parties, and the amount in controversy

16   exceeds $75,000, exclusive of interest and costs.

17       8.    Venue is proper under 28 U.S.C § 1391(b)(2) because a substantial part

18   of the events or omissions giving rise to the claims occurred in this district.   In the

19   alternative, venue is also proper under 28 U.S.C. § 1391(b)(3), as Citibank is subject

20   to the court's personal jurisdiction with respect to this action.

21                      **FACTS COMMON TO ALL COUNTS**

22       9.    In early August, 2020, Plaintiff, through its representative William

23   Needham ("Needham"), entered into negotiations with US Fed Group, through its

24   representative David Huang ("Huang") for the purchase of 3M Health Care Particulate

25   Respirator and Surgical Masks 1860, N95 (the "Masks").  At that time, Huang assured

26   Needham in writing that US Fed Group had a very large allocation for the Masks and

27   that there would be no issues filling orders.

28       10.   On or about August 12, 2020, Huang offered Needham in writing the

4

COMPLAINT

1  opportunity to place a test order for 10,000 Masks.  Huang communicated in writing

2  that the order would run through Datta Holdings, a company Huang had set up to

3  purchase masks from US Fed Group to then sell to smaller buyers.

4      11.    On or about August 12, 2020, in an email sent to Needham, Huang

5  explained, "after going nowhere trying to set up large production orders under 3M's

6  allocation to US Fed, I realized the only way was to set up my own company to buy

7  from US Fed and finance the initial orders, to prove out the process before Buyers are

8  comfortable to put in large orders."  Huang continued, "I have one partner in Datta, he

9  made a lot of money in crypto so was willing to finance these deals."  On information

10  and belief, Huang's referenced partner in Datta Holdings is an individual named Varun

11  Datta.

12      12.    On or about August 12, 2020, Needham expressed interest in Huang's

13  offer, stating that Plaintiff had a significant amount of interest in the Masks from its

14  buyers and that it would be interested in placing more orders down the line.

15      13.    On or about August 13, 2020, Plaintiff entered into a written agreement

16  with Datta Holdings for the purchase of 10,000 Masks (the "August Agreement").  The

17  August Agreement labels Guilbert Tex, Inc. as Buyer and Datta Holdings, LLC as

18  Seller.  Huang signed the August Agreement as Managing Principal of Datta Holdings,

19  LLC.

20      14.    The August Agreement expressly states that if the goods are not delivered

21  to buyer within 30 days, "Seller shall issue Buyer full and complete refund for all

22  deposits and fees paid."

23      15.    On or about August 14, 2020, Plaintiff made the requisite $11,000 deposit

24  to Datta Holdings to complete the order (the "August Order").

25      16.    On or about August 14, 2020, Huang guaranteed in writing that the

26  August order would be delivered in 30 days, but on multiple occasions expressed that

27  it would be delivered in 10-14 days.  The August Order, however, was delivered

28  neither in 10-14 days nor 30 days.

4814-2768-3555, v. 1

17.     Plaintiff, through Needham and other representatives, including Siamak Okhovat ("Okhovat"), contacted Huang multiple times to check on the status of the August Order but was never provided with a clear answer.

18.     As communications with Huang proved futile, Needham contacted and individual named Alex St. James ("St. James"), the alleged vice-president of US Fed Group.  In or about early September, 2020, St. James assured in writing that the masks were available and the August Order would be completed.

19.     After forty days, the August Order still had not been delivered.  Needham then contacted Varun Datta, Manager of Defendant Datta Holdings.  Varun Datta ("Datta") explained in writing that he was unaware of the details of the transaction and that Huang was managing it.  Datta further communicated to Needham that his partner, an individual named Sam Sharma ("Sharma"), would investigate the matter and contact Plaintiff.

20.     On or about September 20, 2020, Sharma contacted Needham by email and admitted that Huang had been misrepresenting the transaction.  Sharma further explained that US Fed Group's minimum order quantity for the Masks was actually 125,000 Masks, not 10,000.  Plaintiff, still interested in the Masks and giving US FED Group and Datta Holdings, LLC the benefit of the doubt, agreed to increase its order to meet the minimum quantity.

21.     On or about September 25, 2020, Plaintiff entered into a written agreement with Datta Holdings and US Fed Group for the purchase of 125,000 Masks (the "September Agreement").  The September Agreement labels Plaintiff Guilbert Tex, Inc. as Buyer and "Datta Holdings, LLC (as the owner of production contract w/US FED GROUP)" as Seller.  Datta has signed the Agreement as principal for Data Holdings.

22.     The September Agreement expressly states that the order would be valid for 30 calendar days only and included the following language, "Seller guarantees goods shall be delivered within the 30 says [sic.] or Seller shall issue Buyer FULL and

4814-2768-3555, v. 1

COMPLETE refund for all deposits and fees paid."

23.     Per the September Agreement, the total cost for the 125,000 masks was $318,750.00.  Of that amount, an initial deposit of $258,750.00 was to be made to US Fed Group and the remaining $60,000.00 was to go to Datta Holdings upon delivery. As directed by Sharma in writing, Plaintiff promptly wired $258,750.00 to US Fed Group to complete the order (the "September Order").

24.     The $258,750.00 wire issued by Plaintiff to US FED Group was sent from Plaintiff's bank account to Citibank Bank Account Number: 15556727 (the "Account"). Upon information and belief, the Account is located in a bank branch located in Washington D.C, which is owned and operated by Defendants.

25.     In early October, 2020, Sharma told Needham, in writing, that US Fed Group had again changed their minimum order quantity to 250,000 masks and that Datta Holdings was prepared to purchase an additional 125,000 masks to meet this quota.  Before Datta Holdings did so, however, US Fed Group again changed its minimum order quantity to 20 million Masks, a quantity astronomically greater than the original 10,000 quantity or the subsequent 125,000 and 250,000 quantities.

26.     On or about October 6, due to US FED Group's unwillingness to move forward with the agreed upon 125,000 quantity, Plaintiff, through Needham, requested both orally and in writing a cancellation of the September Order and an immediate return of its August and September deposits of $11,000.00 and $258,750.00, respectively.

27.     On or about October 6, Sharma agreed to rewire the money to Plaintiff, communicating by email to Needham, "I'll get you the timing on the wire. We will wrap it up this week. I am already moving funds from a different company to this one in order to settle this liability."

28.     On or about October 8, Datta Holdings wired Plaintiff $11,000.00 as a refund of the August Order only.

29.     On or about October 13, Sharma told Needham and Okhovat in writing

4814-2768-3555, v. 1

that Datta Holdings would soon issue a refund for the September order in the amount of $258,750.000.

30.    By October 25, 2020, 30 days after the September Agreement was executed, Plaintiff still had not received the September order, nor had it received a refund.

31.    On or about October 27, 2020, Sharma admitted in writing, "Datta Holdings recognizes that Guilbert Tex has 258,750 stuck within the US FED for which Datta Holdings is responsible" and promised to "refund[] this sum in an expeditious manner." Still, the funds were not returned.

32.    On or about November 9, 2020, Plaintiff, through representatives Needham and Okhovat, again inquired about the status of the refund, explaining that it had to borrow money at 3% interest in order to buy masks from another vendor so that it could perform contracts it had made with buyers who had been waiting for masks from the September Order.

33.    For weeks, Datta Holdings and its representatives promised, both orally and in writing, that the refund would be finalized soon and that the money just had to be moved around from other companies first.

34.    The funds were never returned.  Still, at the time of the filing of this Complaint, over 75 days since the September Order was made, no delivery of Masks has been made nor have any funds been returned.

35.    On or about November 24, 2020, Sharma admitted in writing to the fraudulent nature of the transaction, asking Needham and Okhovat to submit an immediate request for recall with Plaintiff's bank "on the basis of fraud."

36.    On or about November 24, 2020, Plaintiff submitted a request with its bank to recall the Disputed Funds to US Fed Group.  US Fed Group then informed Defendants to deny the return of the Disputed Funds to which Defendants complied.

37.    Upon information and belief, in or about late February or early March 2020, US Fed Group, through St. James, attempted to withdraw the Disputed Funds

8

from the Account.

38.     Upon information and belief, however, a temporary hold was placed on the Account, due to the Federal Bureau of Investigation contacting Defendants and informing them of the fraudulent scheme described herein.

39.     On March 24, 2021, Plaintiff, by and through its counsel, drafted and directed a letter demand to Defendants requesting that Defendants place a permanent hold on the Account and refrain from releasing the Disputed Funds, or any portion thereof to US Fed Group or St. James, as the Disputed Funds are sole property of Plaintiff ("March 24th Letter").

40.     The March 24th letter also contained an affidavit from Plaintiff's chief executive officer, Mr. Okhovat, attesting that the Disputed Funds were Plaintiff's property and that both an agent from the Federal Bureau of Investigation, as well as a U.S. Attorney with the Department of Justice, advised and informed Mr. Okhovat that the Disputed Funds were still located in the Account with Defendants and that US FED Group had attempted to misappropriate them.

41.     On March 26, 2021, Citibank responded to Plaintiff's counsel informing them that they would not place an immediate hold on the Account and that they would not interplead the Disputed Funds or otherwise turn them over to Plaintiff.

**COUNT ONE:**

**Negligence**

**(For Negligence Against All Defendants)**

42.     Plaintiff hereby realleges, and by this reference incorporates herein, each and every allegation of paragraphs 1 through 41, inclusive, as though fully set forth herein.

43.     Upon information and belief, the Disputed Funds are currently being maintained with Defendants in the Account, Citibank Bank Account No. 15556727.

44.     Upon information and belief, in or about late February or early March 2020, US Fed Group, through St. James, attempted to withdraw the Disputed Funds

from the Account.

45.     On March 24, 2021, Plaintiff, by and through its counsel, drafted and directed the March 24th Letter to Defendants, demanding that Defendants a hold on the Account and refrain from releasing the Disputed Funds, or any portion thereof to US Fed Group or St. James.

46.     In the March 24th Letter, Plaintiff provided an affidavit attesting that the Disputed Funds were Plaintiff's property and that both an agent from the Federal Bureau of Investigation, as well as a U.S. Attorney with the Department of Justice, advised and informed Plaintiff that the Disputed Funds remained in the Account with Defendants and that US FED Group and/or St. James had attempted to misappropriate them.

47.     Despite Plaintiff advising Defendants of Plaintiff's sole right to the Disputed Funds, along with the facts upon which Plaintiff was reasonably advised and informed that US Fed Group and/or St. James had attempted to, and sought to continue, misappropriating the Disputed Funds, Defendants have failed to indicate their intention to withhold the funds for any period of time.

48.     Upon information and belief, Defendants continue to refuse to withhold the Disputed Funds from US Fed Group and/or St. James.

49.     Defendants' refusal to withhold the Disputed Funds from US Fed Group and/or St. James, constitutes a violation of California Financial Code section 1450, subdivision (a).

50.     Defendants' refusal to withhold the Disputed Funds from US Fed Group and/or St. James, also constitutes a violation of District of Columbia Code section 26-803.

51.     As a direct, proximate, and legal cause of Defendants' violations of California Financial Code section 1450, subdivision (a), and District of Columbia Code section 26-803, Plaintiff suffered foreseeable general, special, and incidental damages in an amount according to proof in excess of the jurisdictional requirements

4814-2768-3555, v. 1

of this court.

52.     Defendants, and each of them, engaged in such conduct with malice and oppression thereby warranting an award of punitive damages pursuant to Civil Code section 3294, without limitation. Defendants acted willfully and wantonly and with an intent to cause injury to Plaintiff in knowing disregard of Plaintiff's rights and interest in the Disputed Funds. Further, Defendants, and each of them, were aware of the probable dangerous consequences of their conduct, and they deliberately failed to avoid those consequences.

## COUNT TWO:

## Declaratory Relief

## (For Declaratory Relief Against All Defendants)

53.     Plaintiff hereby realleges, and by this reference incorporates herein, each and every allegation of paragraphs 1 through 52, inclusive, as though fully set forth herein.

54.     As alleged herein US Fed Group wrongfully obtained dominion and control over the Disputed Funds when Plaintiff wired payment to the Account, located in a bank branch owned and operated by Defendants.

55.     US Fed Group has retained wrongful possession of the Disputed Funds by holding them the Account.

56.     Upon information and belief, US Fed Group, through St. James recently attempted to withdraw the Disputed Funds from the Account held with Defendants in an attempt to permanently misappropriate them. Although Plaintiff advised and informed Defendants of both their rightful ownership of the Disputed Funds, as well as the US Fed Group and St. James' fraudulent activities as described herein, Defendants refuse and continue to refuse to either place a permanent hold on the Account, return the Disputed Funds to Plaintiff, or interplead the Disputed Funds.

57.     An actual controversy has arisen and now exists between Plaintiffs, on the one hand, and Defendants on the other, in that Plaintiffs contend and Defendants

COMPLAINT

Deny that:

a)     The Disputed Funds are the lawful and sole property of Plaintiff and must be turned over from Citibank Bank Account No. 15556727 to Plaintiff;

b)     Defendants are in violation of District of Columbia Code section 26-803 by failing to continue withholding the Disputed Funds from US Fed Group or St. James for a reasonable period of time, despite Plaintiff notifying Defendants that the Disputed Funds are the property of Plaintiff and that the Disputed Funds were likely about to be misappropriated by US FED Group or St. James,

c)     Defendants are in violation of California Financial Code section 1450, subdivision (a), by failing to continue withholding the Disputed Funds from US Fed Group or St. James, despite Plaintiff notifying Defendants that the Disputed Funds are the property of Plaintiff and that the Disputed Funds were likely about to be misappropriated by US FED Group or St. James,

58.     The foregoing judicial determination(s) are necessary and appropriate at this time so that the parties may ascertain their respective rights, duties, and obligations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For compensatory damages, in an amount to be proven at trial but above the jurisdictional limit.

2.     For punitive damages, in an amount to be proven at trial.

3.     For all applicable interest.

4.     For costs of suit.

5.     For a Court declaration that:

a) The Disputed Funds are the lawful and sole property of Plaintiff and must be turned over from the Citibank Bank Account No.

12

COMPLAINT

1    15556727 to Plaintiff;

2        b) Defendants are in violation of District of Columbia Code section

3    26-803 by failing to continue withholding the Disputed Funds from

4    US Fed Group or St. James for a reasonable period of time, despite

5    Plaintiff notifying Defendants that the Disputed Funds are the

6    property of Plaintiff and that the Disputed Funds were likely about

7    to be misappropriated by US FED Group or St. James,

8        c) Defendants are in violation of California Financial Code section

9    1450, subdivision (a), by failing to continue withholding the

10   Disputed Funds from US Fed Group or St. James, despite Plaintiff

11   notifying Defendants that the Disputed Funds are the property of

12   Plaintiff and that the Disputed Funds were likely about to be

13   misappropriated by US FED Group or St. James,

14      6.   For such other relief as the Court may deem proper.

15

16   Dated:  March 30, 2021        NOVIAN & NOVIAN, LLP
                                   Attorneys at Law
17

18                       By:    /s/ Farhad Novian

19                          FARHAD NOVIAN, State Bar No. 118129
                            ALEXANDER B. GURA, State Bar No. 305096
20                          Attorneys for Plaintiff GUILBERT TEX, INC.

21

22

23

24

25

26

27

28

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff GUILBERT TEX, INC., hereby demands a jury trial in this action.

3

4    Dated:  March 30, 2021            NOVIAN & NOVIAN, LLP
                                        Attorneys at Law
5

6                                 By:    /s/ Farhad Novian
                                        FARHAD NOVIAN, State Bar No. 118129
7                                       ALEXANDER B. GURA, State Bar No. 305096
                                        Attorneys for Plaintiff GUILBERT TEX, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14
COMPLAINT